## THE FIRST NATIONAL BANK OF MORRISTOWN *vs.* BININGER and others.

1. In cases of adverse independent titles, the party holding the property must defend himself as well as he can at law, and he is not entitled to the assistance of a court of equity, for that would be to assume the right to try merely legal titles, upon a controversy between different parties, where there is no privity of contract between them and the third person who calls for an interpleader.

2. A bailee is not entitled to call upon a party to interplead as to the right to the property, on the ground that, as to such party, he is a stakeholder or trustee, when, at the time of the bailment, the party was unknown, and had no connection with the transaction, and if his claim respecting the property is true, the bailee's possession of the property, if not tortious at its inception, became so after demand and refusal to deliver it.

On bill, answer and proofs.

*Mr. H. S. Little,* for complainants.

*Mr. Borcherling* and *Mr. C. Parker,* for Crater.

*Mr. B. C. Chetwood* and *Mr. John Hill,* (of New York,) for Mrs. Bininger.

THE VICE-CHANCELLOR.

This is a bill of interpleader. Its object is to compel the defendants, Philip W. Crater and Maria L. Bininger, to interplead in respect to the hostile titles they set up to three government bonds, of the par value of $2500, deposited with the complainants by Abraham M. Bininger, to indemnify two gentlemen who became his sureties on a recognizance, given by him on suing out a writ of error to remove a judgment against him.

Mr. Crater and Mrs. Bininger set up independent adverse titles. Mr. Crater's title is founded in the ownership of Bininger. He claims by virtue of a judgment against Bininger, and seizure and sale of the bonds under it. Mrs. Bininger, who is the wife of Abraham, claims the bonds were purchased for her, with her own money ; that her husband never had any interest in them ; that their deposit with the complainants was wrongful or tortious as to her, and the complainants, in withholding them against her demand, are wrong-doers.

It will thus be seen, the position of the complainants towards the opposing claimants is radically different. To one they are under the obligations of a bailee. He may recover the bonds without showing title. When the object of the bailment was accomplished, they were bound to surrender them without inquiry as to title. As to the other, if her claim is true, they were wrong-doers, and disputed her right to the possession of the bonds, at their peril.

Under this state of facts, have the complainants a right to require the opposing claimants to interplead ?

This question may be fully answered by simply quoting from elementary authorities.

Judge Story, in his work on *Bailments*, § 110, says : "Where the parties claim in absolute adverse rights, not founded in any privity of title, or any common contract, there the bailee must defend himself as he may, for, generally speaking, he cannot compel strangers to interplead with each other. Indeed, our law goes to the extent of ordinarily

denying a bailee any right to set up the interest or title of a third person against the title of his own bailor."

In his work on *Equity Pleadings*, § 293, he states the rule as follows : " Where the claimants assert their rights under adverse titles, and not in privity, and where the claims are of different natures, the bill is wholly unmaintainable."

And in his work on *Equity Jurisprudence*, §§ 819, 820, he gives the following illustration, and then states what he understands to be settled principle :

" Where a person is in possession of property as bailee, to which the bailor himself has no possessory title, but he is a mere tortious possessor, and the rightful owner demands it of the bailee, in such a case, the question may arise whether he can compel the bailor and the rightful owner to interplead with each other. Upon principle, it would seem that he cannot, for not only is there no privity between him and the rightful owner, but he is himself liable to be deemed a wrongful possessor, if he should, after notice, withhold the property from the rightful owner."

" The true doctrine would seem to be, that, in cases of adverse independent titles, the party holding the property must defend himself as well as he can at law, and he is not entitled to the assistance of a court of equity, for that would be to assume the right to try merely legal titles upon a controversy between different parties, where there is no privity of contract between them and the third person who calls for an interpleader."

A sheriff, where conflicting claims are made to property seized by him under execution, is never permitted to maintain an interpleader ; first, because there can be no privity between him and the person claiming adversely to the judgment debtor ; and, secondly, because he owes no duty to such person, but if his claim is true, the sheriff, as to him, is a trespasser. *Shaw* v. *Coster*, 8 *Paige* 345.

Lord Brougham, in *Pearson* v. *Cardon*, 2 *Russ. & Mylne* 606, in commenting on the question, as to whether an agent or bailee had a right to compel his principal to litigate, with

a stranger, the title to property held by him for his principal, denied its existence in the following emphatic language : " Upon such a state of facts, can I hold this to be a common case of a claim by an agent against his principal, and of another party claiming by another title, foreign to the title of the principal ?   That an agent should have the power of filing a bill of interpleader, when his principal demands the re-delivery of his goods bailed with him, appeared to me so monstrous a proposition, and to involve such frightful conse- quences in mercantile transactions, that I could not suppose it was meant to contend for any such doctrine.   For, in fact, it amounts to this : that an agent may, at any moment, treat his principal to a chancery suit; and I was, therefore, relieved to find that the plaintiff's counsel went entirely on the pecu- liarity of this case."

*Crawshay* v. *Thornton*, 2 *Mylne & Craig* 1, is, in many respects, identical with the case in hand.   Raikes deposited certain parcels of iron with the plaintiffs on storage.   Subse- quently Raikes instructed the plaintiffs the iron had been pledged to Thornton, and delivery should be made to him. Thornton then applied for a statement of the quantity and quality of the iron, which the plaintiffs furnished in writing, and added, they held it at his disposal.   Some time after, the plaintiffs were notified the iron was the property of Daniloff, and that Raikes had no authority to pledge it to Thornton, and its surrender to Daniloff was demanded.   Thornton and Daniloff both brought trover against the plaintiffs, whereupon they filed a bill of interpleader.   Thornton demurred.   Vice- Chancellor Shadwell, sustained the demurrer and dismissed the bill.   On appeal, Lord Cottenham affirmed the Vice- Chancellor, and dismissed the appeal.   In stating his reason he says :   " If the plaintiff has come under any personal obli- gation, independently of the question of property, so that either of the defendants may recover against him at law, with- out establishing a right to the property, it is obvious there is no case for interpleader.   It is familiarly said that there is no interpleader between landlord and tenant, or principal and

agent, but it will be found that the reason for this lies deeper than might be inferred from the statement of this rule; and that it is to be considered, not so much as an independent rule, as a necessary consequence of the principle of all interpleading. In both these cases, rights and liabilities exist between the parties, independent of the title to the property, or to the debt or duty in question, and which may not depend upon the decision of the question of title."

The contract of bailment, as given by the president of the complainants, was that the complainants were to hold the bonds as indemnity to the two gentlemen who had become bail for Mr. Bininger. Though there was no express stipulation to that effect, the law made it the duty of the complainants to surrender the bonds to Mr. Bininger when the liability of his bail ended. The relation of the complainants to Mr. Bininger and his bail grew out of a contract, which provided for the surrender of the bond in spite of any claim which might be made by a third person.

The complainants seek to put their case on the ground that they are stakeholders or trustees. It seems to me impossible to say they hold either of these relations to Mrs. Bininger. At the time of the bailment she was unknown, she had no connection with it, and, if her claim is true, the complainants' possession of the bonds, if not tortious at its interception, became so after demand and refusal. A stakeholder is a third person, chosen by two or more persons, to keep in deposit property, the right or possession of which is in dispute, until some one of them establishes his right to it. A trustee is a person who holds the legal title to certain property, the beneficial use of which belongs to another. I think it would be an unwarrantable misuse of well defined terms to hold the complainants were either stakeholders or trustees of Mrs. Bininger.

If this was a case of first impression, no difficulty would be found in declaring it fell clearly within the purposes designed to be accomplished in the establishment of a court of equity. But the rule, denying the right of the complainants

to require Mrs. Bininger to interplead with the other defend-- ants, is too firmly established to be changed by anything short of legislative power. 2 *Story's Eq. Jur.*, § 820.

I cannot break through a rule so firmly established, as to be in the judgment of Judge Story, no longer open to discussion, even if it was clear a better could be invented. Stability in legal rules is more important than that they should accomplish complete justice in every case.

Contrary to my first impression, freely expressed during the argument, I am convinced this bill cannot be maintained. For the benefit of all parties, I would be glad to follow the course adopted in *Blair* v. *Porter*, 2 *Beas.* 267. There, there was no reason for doubt or dispute who was entitled to the debt due from the complainant. It was manifest on the face of the pleadings, one of the defendants had no shadow of claim to it. According to well settled practice, a dismissal of the bill would necessarily follow, but the Chancellor declined to pursue that course. He held, a dismissal of the bill, at the end of a five years' controversy, with nothing settled but who should pay costs, would defeat the ends of justice. He, therefore, retained the bill, denied the complainant costs, and finally adjudged upon the rights of the defendants. In that case, no question was raised against the complainant's right to require the defendants to interplead, until final hearing, and after the evidence in elucidation of all the issues was in. Here the complainants' right is assailed by both defendants, at the appropriate time in the regular prosecution of the suit. To refuse a dismissal in this condition of affairs would be clear error, which the unsuccessful defendant might use, independent of any question of merit, to escape the decree made in favor of the other.

I will, therefore, advise a dismissal of the bill.